UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION


DARRELL SIMPSON,

                  Petitioner,                              Hon. Richard Alan Enslen

v.                                            Case No. 1:02-CV-862

MICHIGAN DEPARTMENT
OF CORRECTIONS,

                  Respondent.

_____/


## REPORT AND RECOMMENDATION

This matter is before the Court on Simpson's petition for writ of habeas corpus. In accordance with 28 U.S.C. § 636(b) authorizing United States Magistrate Judges to submit proposed findings of fact and recommendations for disposition of prisoner petitions, the Court recommends that Simpson's petition be **denied**.


## BACKGROUND

Following a jury trial, Petitioner was convicted of one count of first degree criminal sexual conduct and one count of second degree criminal sexual conduct for several incidents involving his minor daughter.  (Trial Transcript, January 25, 1995, 147-48).  Petitioner appealed his convictions to the Michigan Court of Appeals asserting the following claims:

        I.        The trial court committed reversible error by admitting irrelevant and unfairly prejudicial evidence of prior "bad acts," thereby depriving Defendant of the constitutional right to due process and a fair trial.  Alternatively, the

court erred in refusing to limit consideration of this evidence only to the sexual contact count.

II.   Substantial prosecutorial misconduct deprived Defendant of a fair trial.

III.   The trial court erred in allowing the admission of a note from the complainant's grandmother which constituted improper hearsay evidence and which bolstered the complainant's version of events.

IV.   The cumulative effect of the errors occurring at trial denied Mr. Simpson a fair trial.

V.   The trial court committed reversible error by allowing the trial to go on when double jeopardy was attached.

VI.   Ineffective assistance of counsel.

VII.   Judicial misconduct.

VIII.   Lack of evidence.

IX.   Mistrials.[1]

The Michigan Court of Appeals affirmed in part and reversed in part Petitioner's conviction. *People v. Simpson*, No. 185484, Opinion (Mich. Ct. App., Nov. 18, 1997). Specifically, the court determined that while the prior bad acts evidence admitted at Petitioner's trial was admissible with respect to the charge of second degree criminal sexual conduct, it was not admissible with respect to the charge of first degree criminal sexual conduct. *Id.* at 1-2. Accordingly, the court remanded the matter to the trial court for a new trial on the charge of first degree criminal sexual conduct. *Id.* at 4.

---

[1]   Claims I through IV were asserted by Petitioner's counsel.  Claims V through IX were asserted by Petitioner in a supplemental pleading.

The State appealed this determination to the Michigan Supreme Court,[2] which remanded the matter to the Michigan Court of Appeals for reconsideration in light of two cases recently decided by the Michigan Supreme Court. *People v. Simpson*, No. 111139, Order (Mich., Nov. 24, 1998). On remand, the Michigan Court of Appeals affirmed its reversal of Petitioner's conviction for first degree criminal sexual conduct, but also reversed (on the same ground) Petitioner's conviction for second degree criminal sexual conduct. *People v. Simpson*, No. 185484, Opinion (Mich. Ct. App., Aug. 6, 1999).

The State appealed this decision to the Michigan Supreme Court, which again remanded the matter to the Michigan Court of Appeals for reconsideration in light of another case recently decided by the Michigan Supreme Court. *People v. Simpson*, No. 1155555, Order (Mich., Dec. 5, 2000). On remand, the Michigan Court of Appeals affirmed both of Petitioner's convictions. *People v. Simpson*, No. 185484, Opinion (Mich. Ct. App., Apr. 20, 2001). Petitioner later submitted in the Michigan Supreme Court a delayed application for leave to appeal in which he asserted the following claims:

I.      The admission of prior bad acts evidence deprived Mr. Simpson of due process and a fair trial.

II.     Substantial prosecutorial misconduct deprived Defendant of a fair trial.

III.    The trial court erred in allowing the admission of a note from the complainant's grandmother which constituted improper hearsay evidence and which the prosecutor improperly used to bolster the complainant's version of events.

---

[2] Petitioner cross-appealed, asserting that both of his convictions should be overturned due to the improper admission of bad acts evidence. In addition to this claim (asserted by counsel), Petitioner also submitted a supplemental pleading in which he asserted the supplemental claims he asserted (claims V through IX noted immediately above) to the Michigan Court of Appeals.

The court denied Petitioner leave to appeal.  *People v. Simpson*, No. 119463, Order (Mich., Nov. 30, 2001).  On November 27, 2002, Petitioner submitted the present petition, asserting the following claims:

I.      Conviction obtained by violation of the protection against double jeopardy.

II.     Denial of effective assistance of counsel.

III.    Prosecution used 404(b) evidence which violates Rule 609(b) of MCR and also violates federal laws for the protection against adverse prosecution under the Constitution and having an equal playing field to fight on.

IV.     Lack of evidence.

V.      Prosecutorial misconduct.

VI.     Judicial misconduct.

VII.    Conspiracy to commit.

VIII.   Jury tampering.

## STANDARD OF REVIEW

Simpson's petition, filed November 27, 2002, is subject to the provisions of the Antiterrorism and Effective Death Penalty Act (AEDPA), as it amended 28 U.S.C. § 2254.  The AEDPA amended the substantive standards for granting habeas relief under the following provisions:

(d)     An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim —

(1)     resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal

-4-

law, as determined by the Supreme Court of the United States, or

(2)     resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

The AEDPA has "modified" the role of the federal courts in habeas proceedings to "prevent federal habeas 'retrials' and to ensure that state-court convictions are given effect to the extent possible under law." *Bell v. Cone*, 535 U.S. 685, 693 (2002).

Pursuant to § 2254(d)(1), a decision is "contrary to" clearly established federal law when "the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." *Williams v. Taylor*, 529 U.S. 362, 412-13 (2000); *see also, Lancaster v. Adams*, 324 F.3d 423, 429 (6th Cir. 2003).

Prior to *Williams*, the Sixth Circuit interpreted the "unreasonable application" clause of § 2254(d)(1) as precluding habeas relief unless the state court's decision was "so clearly incorrect that it would not be debatable among reasonable jurists." *Gordon v. Kelly*, 2000 WL 145144 at *4 (6th Cir., February 1, 2000); *see also*, *Blanton v. Elo*, 186 F.3d 712, 714-15 (6th Cir. 1999). The *Williams* Court rejected this standard, indicating that it improperly transformed the "unreasonable application" examination into a subjective inquiry turning on whether "at least one of the Nation's jurists has applied the relevant federal law in the same manner" as did the state court. *Williams*, 529 U.S. at 409.

In articulating the proper standard, the Court held that a writ may not issue simply because the reviewing court "concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Williams,* 529 U.S. at 411. Rather,

the Court must also find the state court's application thereof to be *objectively* unreasonable. *Bell*, 535 U.S. at 694; *Williams*, 529 U.S. at 409-12. Accordingly, a state court unreasonably applies clearly established federal law if it "identifies the correct governing legal rule from [the Supreme] Court's cases but unreasonably applies it to the facts of the particular. . .case" or "if the state court either unreasonably extends a legal principle from [the Supreme Court's] precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply." *Lancaster*, 324 F.3d at 429 (quoting *Williams*, 529 U.S. at 407).

Furthermore, for a writ to issue, the Court must find a violation of Supreme Court authority. The Court cannot look to lower federal court decisions in determining whether the relevant state court decision was contrary to, or involved an unreasonable application of, clearly established Federal law. *See Harris v. Stovall*, 212 F.3d 940, 943-44 (6th Cir. 2000).

Pursuant to 28 U.S.C. § 2254(d)(2), when reviewing whether the decision of the state court was based on an unreasonable determination of the facts in light of the evidence presented, the factual findings of the state court are presumed to be correct. *See Warren v. Smith*, 161 F.3d 358, 360 (6th Cir. 1998) (citing 28 U.S.C. § 2254(e)(1)). Petitioner can rebut this presumption only by clear and convincing evidence. *Id.*

The deferential standard articulated by the AEDPA, however, does not apply if the state has failed altogether to review a particular claim. As the Sixth Circuit has indicated, where the state court clearly did not address the merits of a claim, "there are simply no results, let alone reasoning, to which [the] court can defer." In such circumstances, the court conducts a *de novo* review. *See McKenzie*, 326 F.3d at 727; *see also Wiggins v. Smith*, 123 S. Ct. 2527, 2542 (2003) (reviewing habeas issue *de novo* where state courts had not reached the question); *Maples v. Stegall*, 340 F.3d 433, 437 (6th

Cir. 2003) (recognizing that *Wiggins* established *de novo* standard of review for any claim that was not addressed by the state courts).

## ANALYSIS

### I.        Double Jeopardy Claim

Petitioner asserts that he was tried "4 different times by 4 different judges. . .in two different courts" in violation of his Fifth Amendment right not to twice be placed in jeopardy for the same offense.  While Petitioner did participate in several different proceedings in this matter, his convictions do not offend the Constitution.

The first proceedings to which Petitioner refers are the April 11, 1994, and May 12, 1994, child protective hearings conducted after Petitioner's arrest to determine whether the victim should be made a ward of the court and whether Petitioner should be prevented from having contact with his other minor children.  (Dkt. #21-22).  Petitioner was not placed in "jeopardy" pursuant to these proceedings. Moreover, these were civil proceedings to which the protections of the double jeopardy clause do not attach.  *See Schellenbach v. Securities and Exchange Commission*, 989 F.2d 907, 911 (7th Cir. 1993) (citing *Breed v. Jones*, 421 U.S. 519, 528 (1975)).  While the remaining proceedings to which Petitioner was subject were all criminal in nature, an examination of these proceedings and their circumstances reveals that Petitioner's right not to twice be placed in jeopardy for the same offense was not violated.

The State's case against Petitioner went to trial on July 18, 1994.  However, following the first day of trial (after a jury was impaneled), Petitioner was involuntarily committed to a mental institution after making threats against adverse witnesses.  (Dkt. #18; Trial Transcript, January 25, 1995, 37-51).  A mistrial was declared and Petitioner was referred for a psychiatric evaluation to assess his

competency to stand trial.  (Dkt. #18).  There is no evidence that Petitioner or his attorney objected to the decision to declare a mistrial.

Petitioner's second trial began on November 8, 1994.  The jury in this matter deadlocked, however, and was unable to resolve the question of Petitioner's guilt or innocence.  (Trial Transcript, November 11, 1994, 3).  Accordingly, without objection from either party, the court again declared a mistrial.  *Id.* at 3-4.  Petitioner's third trial began on January 23, 1995.  The jury returned guilty verdicts on January 25, 1995.  (Trial Transcript, January 25, 1995, 147-50).

Petitioner presented this issue to the Michigan Court of Appeals and the Michigan Supreme Court in pro se pleadings which supplemented the arguments asserted by his appointed counsel. There is no indication that either court addressed this particular claim.  Accordingly, as discussed above the deferential standard articulated by the AEDPA does not apply with respect to this claim.  Instead, the Court must review Petitioner's double jeopardy claim de novo because there is neither a state court ruling nor reasoning for such to which this Court can defer.

The Fifth Amendment to the United States Constitution provides that no person shall "be subject for the same offense to be twice put in jeopardy of life or limb."  U.S. Const. amend. V.  The protections of this provision apply, however, only after jeopardy has first attached.  *See United States v. Jose*, 425 F.3d 1237, 1240 (9th Cir. 2005).  Jeopardy in this matter attached when the jury was impaneled in Petitioner's first criminal trial.  *Id.* (citing *Serfass v. United States*, 420 U.S. 377, 388 (1975)).  Once jeopardy terminates, the Fifth Amendment prevents the State from subjecting the individual to another trial involving the same offense.  *See Sattazahn v. Pennsylvania*, 537 U.S. 101, 106 (2003) (citing *North Carolina v. Pearce*, 395 U.S. 711, 717 (1969)).

Jeopardy generally terminates upon an acquittal or a final judgment of conviction.  *See Jose*, 425 F.3d at 1240 (citing *Sattazahn*, 537 U.S. at 106).  However, unlike a circumstance in which a criminal trial concludes with either an acquittal or conviction, "retrial is not automatically barred when a criminal proceeding is terminated without finally resolving the merits of the charges against the accused."  *Arizona v. Washington*, 434 U.S. 497, 505 (1978); *see also*, *United States v. Gantley*, 172 F.3d 422, 427 (6th Cir. 1999).  As the *Washington* Court recognized, a criminal defendant's interest in having his trial "concluded by a particular tribunal is sometimes subordinate to the public interest in affording the prosecutor one full and fair opportunity to present his evidence to an impartial jury." *Washington*, 434 U.S. at 505.

When a criminal trial ends in a mistrial, subsequent reprosecution of the defendant is permissible where either (a) the mistrial "came at the request or with the acquiescence of the defendant," or (b) where there existed "manifest necessity" to declare a mistrial.  *Gantley*, 172 F.3d at 427.  With respect to the meaning of the phrase "manifest necessity," the Supreme Court has cautioned that

> those words do not describe a standard that can be applied mechanically or without attention to the particular problem confronting the trial judge. Indeed, it is manifest that the key word 'necessity' cannot be interpreted literally; instead, contrary to the teaching of Webster, we assume that there are degrees of necessity and we require a 'high degree' before concluding that a mistrial is appropriate.

*Washington*, 434 U.S. at 505.  Moreover, the decision by the trial court to declare a mistrial is entitled to "great deference" and must be upheld if it resulted from the exercise of "sound discretion."  *Id.* at 514.

A review of the particular facts and circumstances of this matter compels the conclusion that the two mistrials which preceded Petitioner's convictions were the product of manifest necessity. The first mistrial was the result of Petitioner's involuntary hospitalization in a mental health facility. When assessing the propriety of the trial court's decision to declare a mistrial, it is important to

remember the nature of Petitioner's illness.  Had Petitioner succumbed to a *physical* illness, even one requiring hospitalization, it may have been necessary for the trial court (before declaring a mistrial) to continue the proceedings, at least long enough to assess the severity of Petitioner's illness and determine the likely amount of time which he would be unable to attend and/or participate in his trial.  *See, e.g., Dunkerley v. Hogan*, 579 F.2d 141, 147-48 (2d Cir. 1978) (where the defendant suffered a collapsed lung requiring emergency hospitalization, the trial court's decision to immediately declare a mistrial (instead of continuing the trial for a brief period of time) violated the defendant's rights under the double jeopardy clause).

        Instead, Petitioner was involuntarily committed for treatment in a mental health facility. As previously noted, this action prompted legitimate questions regarding Petitioner's competence to stand trial.  Unlike a physical illness which may resolve itself fairly quickly, it is not reasonable to assume that questions concerning a criminal defendant's competence to stand trial are amenable to quick resolution.  Accordingly, the Court concludes that the trial court's decision to declare a mistrial following Petitioner's hospitalization did not violate Petitioner's constitutional rights.  The Court finds that a mistrial was, under the circumstances, manifestly necessary.  Furthermore, there is no evidence that Petitioner or his attorney objected to the decision to declare a mistrial.

        With respect to the second mistrial, the Court reaches the same conclusion.  First, as is well recognized, a "dead-locked or hung jury constitutes 'manifest necessity' of a declaration of mistrial because 'the ends of justice would otherwise be defeated.'"  *Daniels v. Burke*, 83 F.3d 760, 763 (6th Cir. 1996) (quoting *Richardson v. United States*, 468 U.S. 317, 324 (1984)).  Moreover, Petitioner did not object to the trial court's decision to declare a mistrial.

In sum, for the reasons articulated herein, the Court concludes that Petitioner's constitutional right not to twice be placed in jeopardy for the same offense was not violated. Accordingly, this claim raises no issue upon which habeas relief may be granted.


**II.        Sufficiency of the Evidence Claim**

Petitioner asserts that he is entitled to habeas relief because there did not exist sufficient evidence to support his conviction.   Specifically, Petitioner asserts that his conviction must be overturned because "only the words from complainant is not enough to convict a person of an alleged violation of the law."

Petitioner presented this issue to the Michigan Court of Appeals and the Michigan Supreme Court in pro se pleadings which supplemented the arguments asserted by his appointed counsel. There is no indication that either court addressed this particular claim.   Accordingly, as discussed above the deferential standard articulated by the AEDPA does not apply with respect to this claim.   Instead, the Court must review Petitioner's sufficiency of the evidence claim de novo.

Claims challenging the sufficiency of the evidence are governed by the standard articulated in *Jackson v. Virginia*, 443 U.S. 307 (1979), pursuant to which it must be determined whether viewing the evidence in the light most favorable to the prosecution and according the benefit of all reasonable inferences to the prosecution, any rational trier of fact could have found Petitioner guilty beyond a reasonable doubt.   *See Martin v. Mitchell*, 280 F.3d 594, 617 (6th Cir. 2000) (citing *Jackson*, 443 U.S. at 324).

With respect to Petitioner's conviction for first degree criminal sexual conduct, Michigan law in effect as of the date Petitioner committed the acts for which he was convicted provided, in pertinent part, as follows:

> A person is guilty of criminal sexual conduct in the first degree if he or she engages in sexual penetration with another person and if any of the following circumstances exist:
>
> (a)   That other person is under 13 years of age.
>
> (b)   That other person is at least 13 but less than 16 years of age and any of the following:
>
>> (i)    The actor is a member of the same household as the victim.
>>
>> (ii)   The actor is related to the victim by blood or affinity to the fourth degree.
>>
>> (iii)  The actor is in a position of authority over the victim and used this authority to coerce the victim to submit.

Mich. Comp. Laws § 750.520b.

Sexual penetration was defined as "sexual intercourse, cunnilingus, fellatio, anal intercourse, or any other intrusion, however, slight, of any part of a person's body or of any object into the genital or anal openings of another person's body, but emission of semen is not required." Mich. Comp. Laws § 750.520a.

With respect to Petitioner's conviction for second degree criminal sexual conduct, Michigan law in effect as of the date Petitioner committed the acts for which he was convicted provided, in pertinent part, as follows:

> A person is guilty of criminal sexual conduct in the second degree if the person engages in sexual contact with another person and if any of the following circumstances exist:

      (a)     That other person is under 13 years of age.

      (b)     That other person is at least 13 but less than 16 years of age and any of the following:

            (i)     The actor is a member of the same household as the victim.

            (ii)    The actor is related to the victim by blood or affinity to the fourth degree.

            (iii)   The actor is in a position of authority over the victim and used this authority to coerce the victim to submit.

Mich. Comp. Laws § 750.520c.

Sexual contact was defined as "the intentional touching of the victim's or actor's intimate parts or the intentional touching of the clothing covering the immediate area of the victim's or actor's intimate parts, if that intentional touching can reasonably be construed as being for the purpose of sexual arousal or gratification."  Mich. Comp. Laws § 750.520a.

Petitioner's daughter testified that beginning when she was age 12 until she was age 15, Petitioner repeatedly engaged in inappropriate sexual behavior with her, including exposing himself to her, fondling her breasts, and forcing her to engage in sexual intercourse.  (Trial Transcript, January 24, 1995, 126-33).  Two other witnesses testified regarding inappropriate sexual conduct which they endured by Petitioner.

The first witness, D.B., testified that she used to babysit for Petitioner's family.  (Trial Transcript, January 25, 1995, 30-31).  She testified that on one occasion, when she was 13 years of age, Petitioner approached her from behind and began fondling her breasts.  *Id.* at 31-34.  She testified that Petitioner's actions were not accidental, as he fondled her breasts for 15-20 seconds.  *Id.*

The second witness, R.J., testified regarding an incident that occurred when she was five years old. *Id.* at 65. She testified that she was at Petitioner's residence playing with Petitioner's daughter when Petitioner asked her to come into his bedroom. *Id.* at 65-67. After R.J. entered the bedroom, Petitioner shut the door and asked R.J. if she wanted to play a game called "blind man's bluff." *Id.* at 67. She agreed, at which point Petitioner blindfolded her and placed her on the bed. Petitioner then proceeded to remove her pants and touch her genitals.[3] *Id.*

Viewing this evidence in a light most favorable to the prosecution, and according the benefit of all reasonable inferences to the prosecution, a reasonable juror could certainly have found Petitioner guilty beyond a reasonable doubt of the offenses for which he was convicted. Accordingly, this claim raises no issue upon which habeas relief may be granted.


**III.        Evidentiary Claim**

Petitioner claims his conviction must be overturned because it was secured through the admission of improper character evidence. As noted in the preceding section, the prosecution presented testimony from two witnesses who claimed that Petitioner also sexually assaulted them. Petitioner asserts that the introduction of this testimony violated his constitutional rights.

Generally, errors by a state court on matters involving the admission or exclusion of evidence are not cognizable in a federal habeas proceeding. *See Clemmons v. Sowders*, 34 F.3d 352, 357 (6th Cir. 1994); *Clark v. O'Dea*, 257 F.3d 498, 503 (6th Cir. 2001). Habeas relief is warranted, however, if the error "had substantial and injurious effect or influence in determining the jury's verdict."

---

[3] Both of these incidents resulted in convictions for Petitioner. (Trial Transcript, January 23, 1995, 30). While these witnesses were allowed to testify regarding these incidents, the court did not permit the prosecution to introduce evidence of Petitioner's subsequent convictions. *Id.* at 31-32.

*Clemmons*, 34 F.3d at 357 (quoting *Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993)).  This requires Petitioner to demonstrate "actual prejudice" resulting from a constitutional error.  *Id*.

To establish constitutional error, Petitioner cannot simply argue that the trial court's evidentiary ruling was improper, as "federal habeas corpus relief does not lie for errors of state law." *Estelle v. McGuire*, 502 U.S. 62, 67 (1991).  Rather, Petitioner must establish that his conviction violated the Constitution, laws, or treaties of the United States.  *Id.*  In this respect, it is recognized that "errors of state law" which render a trial fundamentally unfair violate the constitutional guarantee of due process and, therefore, can serve as the basis for habeas relief.  *See Norris v. Schotten*, 146 F.3d 314, 328-29 (6th Cir. 1998) (citing *Estelle*, 502 U.S. at 67-68).  Fundamental fairness does not, however, "require a perfect trial."  *Clemmons*, 34 F.3d at 358.

Before the initial trial in this matter began, the prosecution filed a motion in limine to permit the introduction of the evidence at issue.  (Motion Transcript, July 18, 1994).  The trial court granted the prosecution's motion, concluding that the evidence was admissible under Michigan law.  *Id.* at 18-20.  Specifically, the trial court determined that the evidence was relevant and was admissible to show Petitioner's "modus operandi."  The court further determined that the probative value of this evidence was not substantially outweighed by the danger of undue prejudice to Petitioner.  The trial court further determined, however, that the jury must be given an appropriate limiting instruction regarding the evidence.  *Id.*  This matter was addressed at the outset of Petitioner's two subsequent trials, with both courts reaching the same conclusion.  (Trial Transcript, January 23, 1995, 4-35).

In its decision affirming Petitioner's convictions, the Michigan Court of Appeals concluded that

> the evidence was offered for a proper purpose, it was relevant to an issue
> of fact of consequence at trial, its probative value was not substantially

outweighed by the danger of unfair prejudice and the trial court gave an appropriate limiting instruction.  We agree that the evidence was, therefore, admissible to show modus operandi or a common plan, scheme or system of committing the acts and did not constitute impermissible character to conduct or propensity evidence.  While this is a close evidentiary question in this case, reasonable minds could differ regarding whether the other acts evidence shared enough common features to support an inference that the uncharged and charged acts showed a common scheme, plan or system.  Accordingly, under the circumstances of this case, we cannot conclude that the trial abused its discretion in admitting the evidence under MRE 404(b).

*People v. Simpson*, No. 185484, Opinion at 2 (Mich. Ct. App., Apr. 20, 2001).

The Court concedes that the evidentiary question presented by the admission of this evidence is perhaps a close one.  However, the Court's role in this instance is not to determine whether it agrees with the decision to admit the challenged evidence.  Instead, the Court's role is to determine whether the admission of such evidence violated Petitioner's constitutional rights.  The Court discerns no basis for concluding that such is the case.  Accordingly, this claim presents no issue upon which habeas relief may be granted.

IV.          **Prosecutorial Misconduct Claim**

Petitioner claims that the prosecutor engaged in misconduct by relying on the allegedly improper character evidence discussed in the preceding section.  As discussed above, however, the introduction of this evidence did not violate Petitioner's constitutional rights.  Accordingly, the prosecutor's reliance on such cannot constitute misconduct.  The Court concludes, therefore, that this claim presents no issue upon which habeas relief may be granted.

## V.          Judicial Misconduct and Jury Tampering Claims

During jury selection of Petitioner's last trial, the following exchange occurred between the prosecuting attorney and a prospective juror:

| | |
|---|---|
| Ms. Brinkman: | Being a juror, is that - what kind of experience is that?  Is it like what they show on TV or what were your impressions?   What were you telling your friends over coffee or what have you after you were a juror about being a juror? |
| Juror Jenks: | Well, I guess in summary I'd conclude it's not any fun. Certainly sitting in a position where you're making decisions about your peers is by no means easy and not something I found to take very lightly, you know, going home at night thinking that, you know, you've made a decision and there's wondering if truly it was the right one.  I mean that was a matter of wondering if what you did was right and - |
| Ms. Brinkman: | Kind of stressful? |
| Juror Jenks: | To a point, yeah. |
| Ms. Brinkman: | Are you ready to be put in that position again in this kind of case? |
| Juror Jenks: | Yeah, I don't have any problems other than the - |
| Ms. Brinkman: | Okay. |
| Juror Jenks: | - the certain notoriety of being involved with the Simpson case. |

| Ms. Brinkman: | I wondered when someone was going to bring that up. |
| Juror Jenks: | This could be a bit overwhelming. |
| Ms. Brinkman: | We won't sequester you for six months. |
| Juror Jenks: | Thank you. I appreciate that. |

(Trial Transcript, January 24, 1994, 57-58).

Petitioner asserts that this exchange constitutes misconduct and jury tampering by the trial judge. Specifically, Petitioner claims that this exchange served to connect in the juror's minds his trial with the then on-going criminal trial of O.J. Simpson. These claims are completely without merit. First, as the trial transcript reveals, the trial judge said nothing to the jury (or anybody else) about the O.J. Simpson case or made any comment which could reasonably be interpreted as connecting Petitioner's case with that of O.J. Simpson. Moreover, the comments at issue (initiated by a juror) are innocuous and in no way served to deprive Petitioner of a fair trial. Furthermore, there is absolutely no similarity between Petitioner and O.J. Simpson or the crimes with which each was charged.

## VI.        Conspiracy to Convict Claim

Petitioner claims that during his trial his attorney "openly stated that where the prosecutor was headed was not what they had agreed to in the judge's chambers before the trial." Petitioner further asserts that "this was not known to me at all that they had made any deals of decisions between them before during or after trial at all." Petitioner claims that this alleged exchange demonstrates that the trial judge, prosecutor, and his attorney all conspired together to secure his conviction.

Petitioner has failed to indicate where in the record this alleged exchange appears. The Court has carefully reviewed the transcripts of Petitioner's trial and has failed to uncover any such (or even remotely similar) exchange. Petitioner has presented no other evidence to support his conspiracy claim. Accordingly, the Court finds that this claim presents no issue upon which habeas relief may be granted.

**VII.        Ineffective Assistance of Counsel Claim**

Petitioner claims that he was denied the right to the effective assistance of counsel at trial. Specifically, Petitioner asserts that his trial attorney "refused to put up any defense at all in front of this panel of jury members to show I was and still am innocent."

To establish that counsel's performance was constitutionally deficient, Petitioner must first establish that his counsel's performance was so deficient that he was not functioning as the "counsel" guaranteed by the Sixth Amendment. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). Accordingly, it must be demonstrated that counsel's actions were unreasonable under prevailing professional norms. *Id.* at 688. In making this determination, however, the Court must "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the [Petitioner] must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'" *Id.* at 689.

Second, Petitioner must further establish that counsel's performance was prejudicial in that it denied him a fair trial. *See Id.* at 687; *McQueen v. Scroggy*, 99 F.3d 1302, 1310 (6th Cir. 1996). This is a heavy burden for Petitioner to meet, because he must establish that his counsel's performance was "so manifestly ineffective that defeat was snatched from the hands of probable victory." *United*

*States v. Morrow*, 977 F.2d 222, 229 (6th Cir. 1992) (*en banc*), *cert. denied*, 113 S. Ct. 2969 (1993) (emphasis in original); *see also, West v. Seabold*, 73 F.3d 81, 84 (6th Cir. 1996).

Petitioner asserts that his attorney rendered ineffective assistance by failing to present the testimony of the defense witnesses who testified at his second trial. At this trial, Petitioner presented testimony from four witnesses. An examination of their testimony, however, fails to support the conclusion that counsel was ineffective for failing to present such as Petitioner's final trial.

Jeffrey Young testified he and Petitioner had been friends for several years. (Dkt. #46, Trial Transcript, November 9, 1994, 91-92). Young testified that during this time he had visited with Petitioner and his family approximately once each week. *Id.* at 92-93. According to Young, Petitioner's daughter was present "most every time" he visited. *Id.* Young testified that in his opinion Petitioner's daughter was not to be completely trusted. *Id.* at 93-94. On cross-examination, however, Young was unable to recall any specific incident which formed the basis of his opinion. *Id.* at 94-96.

Amy Young testified that she had been friends with Petitioner for approximately ten years. *Id.* at 99. She testified that she visited Petitioner and his family every weekend, during which time she has had an opportunity to observe Petitioner's daughter. *Id.* at 100. Young testified that in her opinion Petitioner's daughter was lying. *Id.* at 100-01. On cross-examination, however, Young was unable to recall any specific incident which formed the basis of her opinion. *Id.* at 101-05.

Scott Kaiser, Petitioner's brother-in-law, testified that he had known Petitioner's daughter since birth and visited with Petitioner's family on a fairly regular basis. *Id.* at 106. When asked to give an opinion as to the truthfulness of Petitioner's daughter, Kaiser testified that "there are times where stories are said that are hard to believe, little lies here and there." *Id.* at 107. On cross-examination, Kaiser testified that his opinion was based on his belief that Petitioner's daughter may have occasionally

failed to abide by her parents' rules. *Id.* at 108-10. Kaiser acknowledged, however, that he had no knowledge that Petitioner's daughter ever lied about such transgressions or any other matter. *Id.*

Scott Vashaw, an assistant principal at the school which Petitioner's daughter attended, testified that Petitioner's daughter had once been suspended for giving another student work which she created and permitting the other student to submit it as her own. (Dkt. #45, Trial Transcript, November 9, 1994, 56-60). Vashaw also testified that Petitioner's daughter exhibited "fairly consistent" grades, attendance, and discipline. *Id.* at 58. On cross-examination, Vashaw acknowledged that he did not know Petitioner's daughter well enough to render an opinion as to her truthfulness or veracity. *Id.* at 60.

The Court discerns no deficiency in counsel's decision not to present testimony from these witnesses at Petitioner's final trial. While Jeffrey Young, Amy Young, and Scott Kaiser each testified that in their opinion Petitioner's daughter was less than truthful, each was also forced to acknowledge on cross-examination that they could not recall any specific incident in which Petitioner's daughter exhibited dishonest behavior. As for Scott Vashaw's testimony, aside from his testimony regarding the suspension of Petitioner's daughter, his testimony failed to support Petitioner's theory that his daughter was dishonest. As for Vashaw's testimony regarding the suspension of Petitioner's daughter, the fact and circumstances of such were presented at trial by Petitioner's daughter. (Trial Transcript, January 24, 1995, 136, 144-47, 165-66). In this regard, her testimony was consistent with that presented by Vashaw.

It is not reasonable to conclude that the admission of such testimony would have affected the outcome. Accordingly, counsel was not deficient for failing to present such testimony. Even if counsel's failure constituted deficient performance, however, Petitioner has presented no evidence

establishing that he was prejudiced by such.  Accordingly, the Court concludes that this claim raises no issue upon which relief may be granted.

## **CONCLUSION**

For the reasons articulated herein, the Court concludes that Petitioner is not being confined in violation of the laws, Constitution, or treaties of the United States.  Accordingly, the Court recommends that Simpson's petition for writ of habeas corpus be **denied**.

OBJECTIONS to this Report and Recommendation must be filed with the Clerk of Court within ten (10) days of the date of service of this notice.  28 U.S.C. § 636(b)(1)(C).  Failure to file objections within the specified time waives the right to appeal the District Court's order. *Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).

Respectfully submitted,


Date:  January 23, 2006                          __/s/ Ellen S. Carmody_____
                                                 ELLEN S. CARMODY
                                                 United States Magistrate Judge